# 17-cv-06810-FPG

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GLIEE V. GUNSALUS and
BRIAN L. GUNSALUS, SR.
         *Plaintiffs-Appellants*

     v.

COUNTY OF ONTARIO, NEW YORK, and "JOHN DOE" and "JANE
DOE", said names being fictitious, it being the intention of Plaintiffs to
name any third-party purchaser of Plaintiffs' home at 1338 White Road,
Phelps, NY 14532 during the property tax foreclosure auction scheduled by
Ontario County at 2914 County Road 48, Canandaigua, NY 14424 at 7 p.m.,
May 17, 2017
         *Defendant(s)-Appellee(s)*

---

## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

---

## BRIEF FOR PLAINTIFFS-APPELLANTS

---

Legal Assistance of Western New York, Inc.
Kari A. Talbott, of Counsel
*Attorneys for Plaintiffs-Appellants*
361 S. Main Street
Geneva, New York 14456
(315) 781-1465
ktalbott@lawny.org

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES …..…………………………………………...…………………………iii

STATEMENT OF JURISDICTION ....…………………………………..………………………......1

STATEMENT OF ISSUES AND STANDARD OF REVIEW ON APPEAL ...…………………..2
    A. Issues on Appeal …………………………………………………………..………...2
    B. Standard of Review ………………………………………………..……………….....2

STATEMENT OF THE CASE …………………………………………………………………….3
    A. Nature of the Dispute …..……………………………………………….…………...3
    B. Disposition Below …..……………………………………………………………….4

STATEMENT OF FACTS …………………………………………………………………….4
    A. The Gunsaluses …………………………………………………………………….4
    B. The Article 11 RPTL Tax Foreclosure..……………………………………………6
    C. The Chapter 13 Proceeding ……………………………...…………………………8
    D. The Adversary Proceeding …………………………………………………………9
    E. The Decision Below ………………………………………………………………10
    F. Post-Decision Proceedings …..……………………………………….…………13

SUMMARY OF THE ARGUMENT …....................…………………………………..13

ARGUMENT ………………………………………………………………………………15

I. THE BANKRUPTCY COURT MISAPPLIED A U.S. SUPREME
COURT PRECEDENT WHEN FINDING THAT ONTARIO COUNTY
PRESUMPTIVELY GAVE "REASONABLY EQUIVALENT VALUE"
AS PART OF ARTICLE 11 TAX FORECLOSURES ...………………………….…………15

A.   Article 11 tax foreclosures lack a pre-seizure auction, a key
    procedural safeguard identified in <u>BFP</u> as necessary for giving
    "reasonably equivalent value" …………………………………………………………16

B.   There is no presumption of reasonably equivalent value where
    there is no relationship between asset seized and value given………………………20

C.  There is no presumption of reasonably equivalent value when
    Article 11 proceedings provide for the County, rather than the
    Gunsaluses, to retain the surplus from an auction held after the
    property has been foreclosed …………………………………………………………..24

i

Page

II.   USING BFP's STANDARD FOR DETERMINING "REASONABLY
EQUIVALENT VALUE", ONTARIO COUNTY WAS NOT ENTITLED
TO A CONCLUSIVE PRESUMPTION OF "REASONABLY EQUIVALENT
VALUE" …………..……………………………………………………………………26

III. THE BANKRUPTCY COURT'S RELIANCE ON DUE PROCESS
CASE LAW TO DETERMINE SUFFICIENCY OF A TRANSFER
UNDER 11 U.S.C. § 548 IS MISPLACED ……………..…………………………………28

IV. THE BANKRUPTCY COURT'S DECISION FAILS TO RECOGNIZE
THE STRONG BANKRUPTCY INTERESTS IN GRANTING
11 U.S.C. § 548 RELIEF TO THE GUNSALUSES …………………………………………33

A.  Avoiding the transfer furthers the recognized bankruptcy interests of
     protecting exempt assets, ensuring debtors a fresh start, and enabling
     the success of reorganizations for the benefit of all creditors ………………………………33

B.  Avoidance proceedings will not unduly impair state interests or
     prejudice Ontario County ...……………………………………………………………………37

C.  The Bankruptcy Court erroneously elevates the state's interests above
     the Gunsaluses' right to avoidance under the bankruptcy code and fails
     to account for the impact on other creditors ...…………………………………………………38

CONCLUSION …………………………………………………………………………………40

## **TABLE OF AUTHORITIES**

**CASES**                                                                                    Page

Barber v. Golden Seed Co.,
    129 F.3d 382 (7th Cir. 1997)………………………………………………………………20

BFP v. Resolution Trust Corp.
    511 U.S. 531   (1994) ……………………………...2, 11, 12, 16, 18-21, 24, 26-28, 31, 33

Canandaigua Land Dev., LLC v. County of Ontario (In re Canandaigua),
    521 B.R. 457 (Bankr. W.D.N.Y. 2014) (Warren, J.), *and vacated*,
    2017 WL 2821874, 2017 Bankr. LEXIS 1840 (June 29, 2017)……………………..11, 12

In re Chase,
    No. 02-10582, WL 189711, 2005 (Bankr. D. Vt. Jan. 27, 2005)……………………34, 39

City of Milwaukee v. Gillespie ,
    487 B.R. 916 (E.D. Wis. 2013)………………………………………… 18, 19, 22, 33, 37

Clinton Cty. Treasurer v. Wolinsky,
    511 B.R. 34 (N.D.N.Y. 2014) ………………………………………… 14, 18, 28, 39

Coleman through Bunn v. D.C.,
    70 F. Supp. 3d 58 (D.D.C. 2014) ………………………………………………..32

County of Clinton v. Warehouse,
    496 B.R. 278 (N.D.N.Y. 2013) ...……………………………………………..18, 20, 21

Emrich v. Touche Ross & Co.,
    846 F.2d 1190 (9th Cir. 1988) ...……………………………………………………….3

Forest Park Pictures v. Universal Television Network, Inc.,
    683 F.3d 424 (2d Cir. 2012)……………………………………………………………….3

In re GGI Properties, LLC,
    568 B.R. 231 (Bankr. D.N.J. 2017 ……………………………………………………18

Gunsalus v. Ontario Cty., New York,
    576 B.R. 302 (Bankr. W.D.N.Y. 2017) …..………………………10-12, 15, 17, 29, 30, 32

Matter of Hahn,
    5 B.R. 242 (Bankr. S.D. Iowa 1980) ……………………………………………………36

In re Herkimer Forest Prod. Corp.,
    No. 04-13978, 2005 WL 6237559 (Bankr. N.D.N.Y. 2005) …………………... 18, 27, 37

Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n,
    655 F.3d 136 (2d Cir. 2011) ………………………………………………………………3

In re Jacobson,
    523 B.R. 13 (Bankr. D. Conn. 2014) …………………………………………………25

Klein v. Civale & Trovato, Inc. (In re The Lionel Corp.),
    29 F.3d 88 (2d Cir. 1994) …………………………………………………………………2

In re Martyak
    432 B.R. 25 (Bankr. N.D.N.Y. 2010) …………………………………………………18

Mary Jo C. v. New York State and Local Retirement System,
    707 F.3d 144 (2d Cir. 2013) ………………………………………………………………3

Miner v. Clinton Cty., N.Y.,
    541 F.3d 464 (2d Cir. 2008) cert. denied,
    556 U.S. 1128, 129 S. Ct. 1625, 173 L. Ed. 2d 996 (2009) ……………………………...32

In re Murphy,
    331 B.R. 107 (Bankr. S.D.N.Y. 2005) ……………………………… 17-19, 21, 24, 26, 30

Nelson v. City of New York,
    352 U.S. 103, 77 S. Ct. 195, 1 L. Ed. 2d 171 (1956) …………...……………………29-32

Salim v. VW Credit, Inc.,
    577 B.R. 615 (E.D.N.Y. 2017) ...….………………………………………………………2

In re Sherman,
    223 B.R. 555 (B.A.P. 10th Circ. 1998) ...…………………………………………18, 33
In re Smith,
    811 F.3d 228 (7th Cir.), cert denied, 137 S.Ct. 103 (2016) ………14, 18, 22, 28, 31, 34, 40

In re Tracht Gut, LLC,
    503 B.R. 804 (B.A.P. 9th Cir. 2014), aff'd, 836
    F.3d 1146 (9th Cir. 2016) …………………………………………………………….25

Matter of Varquez,
    502 B.R. 186 (Bankr. D.N.J. 2013) …………………………………………….. 18, 23

In re Wentworth,
    221 B.R. 316 (Bankr. D.Conn. 1998) ………………………………………....23,27, 37

## STATUTES AND REGULATIONS

11 U.S.C. § 362…………………………………………………………….... 34, 38

11 U.S.C. § 522(d)(1)…………………………………………………………….35

11 U.S.C. § 522(h) ……………………………………………………… 2, 9, 14, 35

11 U.S.C. § 548……………………………………………………....11, 14, 16, 29, 33, 34, 38

11 U.S.C. § 548(a) ……………………………………………………………….31

11 U.S.C. § 548(a)(l ) ……………………………………………………………2, 14

11 U.S.C. § 548(a)(1)(B) ……………………………………………………….9

11 U.S.C. § 548(a)(1)(B)(i) ……………………………………………………....3, 14

11 U.S.C. §§1321-1330 …………………………………………………………8

11 U.S.C. § 1325(a)(3) ………………………………………………………….9

11 U.S.C. § 1325(a)(5)(B)(i)(1) ……………………………………………….9, 34

11 U.S.C. § 1325(a)(6) ……………………………………………...…….8

11 U.S.C. § 1325(b)(1)(B) ……… ……………………………………………….8

11 U.S.C. § 1326 ……………………………………………………...……………8

28 U.S.C. § 157(a) ………………………………………………………………....1

28 U.S.C. §157(b)(1) ……………………………………………………………….1

28 U.S.C. § 157(b)(2)(H)…………………………………………………………………………1

28 U.S.C. § 158(a)(1) ……………………………………………………………………..……1

28 U.S.C. §1334(b)…………………………………………………………………………..1

 NY Real Property Tax Law Article 11…………………………...2, 6, 11, 12, 15, 19, 21, 23-31, 39

NY Real Property Tax Law §1131……………...……………………………13, 25, 26, 28, 31

NY Real Property Tax Law §1136(2)…………………………………………..8, 13, 25, 26, 28

NY Real Property Tax Law §1136……………………………………………………………31

NY Real Property Tax Law §1136(3) ...……………………………………………………...8

NY Real Property Tax Law §1138(e) ………………………………………………... 6, 40

NY Real Property Tax Law §1184 …………………………………………………….... 6, 40

New York Real Property Actions and Proceedings Law § 1361(3) ...…………………………..8

## FEDERAL RULES

Rule 12(b)(6) Federal Rules of Civil Procedure...………………………………………...1, 3

Rule 7012(b) Federal Rule of Bankruptcy Procedure …………………………………………1

Rule 8002(a) Federal Rule of Bankruptcy Procedure ......…………………………………...1

Rule 8007 Federal Rule of Bankruptcy Procedure ...………………………………………..13

## CONSTITUTIONAL PROVISIONS

U.S. Const. Art. I, Section 8, cl. 4. …………………………………………...……..31

## TREATISES/SECONDARY

NCLC Consumer Bankruptcy Law and Practice, s 10.1.3 ...……………………………………36

Scott B. Ehrlich, *Avoidance of Foreclosure Sales as
Fraudulent Conveyances: Accommodating State and Federal Objectives,*
     71 Va. L.Rev. 933, 935–36; 951-52 (1985)………………………………………....14

## **STATEMENT OF JURISDICTION**

This is an appeal from a November 6, 2017 Decision and Order (the "Decision") of the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court"). The Decision, made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, granted Defendant-Appellee Ontario County (the "Defendant-Appellee" or "Ontario County")'s motion to dismiss the Plaintiffs-Appellants ("the Gunsaluses")'s adversary proceeding. The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(a)-(b)(1) and 1334(b). This was a core proceeding under 28 U.S.C. § 157(b)(2)(H). The County did not object to the Bankruptcy Court's jurisdiction under Federal Rule of Bankruptcy Procedure (FRBP) Rule 7012(b).

The Decision is a final judgment permanently dismissing the Gunsaluses' adversary proceeding and barring them from prosecuting their fraudulent conveyance action against Ontario County to avoid the loss of their home. The Decision was entered on or about November 6, 2017. Appendix (hereinafter "A.") at 97. Appellants Gunsaluses filed their notice of appeal with the Bankruptcy Clerk on November 17, 2017, pursuant to Rule 8002(a) FRBP. A. at 115. This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1).

## STATEMENT OF ISSUES AND STANDARD OF REVIEW ON APPEAL

A. Issues on Appeal

Whether the Bankruptcy Court misapplied the Supreme Court's holding in BFP v. Resolution Trust Corp., 511 U.S. 531 (1994) to Ontario County's New York Real Property Tax Law (RPTL) Article 11 tax foreclosures by, finding that protections embedded in a pre-foreclosure bidding process are not an essential element in determining "reasonably equivalent value" under 11 U.S.C. §§ 522(h) and 548(a)(1), omitting a critical feature of the BFP analysis; and

Whether the Bankruptcy Court erred in granting Ontario County's motion to dismiss based upon a finding that Ontario County was entitled to a conclusive presumption of providing "reasonably equivalent value" under 11 U.S.C. §§ 522(h) and 548(a)(1), where Ontario County failed to provide a pre-seizure auction and retains any surplus from a post-seizure auction and there was no relationship between the value of the foreclosed lien and the value of the property foreclosed upon.

B. Standard of Review

The issues on appeal concern questions of law and, as a result, the standard of review for all issues on appeal is *de novo.* Appellate review of a final decision of the Bankruptcy Court is *de novo.* Klein v. Civale & Trovato, Inc. (In re The Lionel Corp.), 29 F.3d 88, 92 (2d Cir. 1994); Salim v. VW Credit, Inc., 577 B.R. 615, 621

(E.D.N.Y. 2017). Moreover, *de novo* review applies to the decision of a lower court granting a Motion to Dismiss under FRCP 12(b)(6). <u>Mary Jo C. v. N.Y. State & Local Ret. Sys.</u>, 707 F.3d 144, 151 (2d Cir. 2013); <u>Forest Park Pictures v. Universal Television Network, Inc.</u>, 683 F.3d 424, 429 (2d Cir. 2012)(citing <u>Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n</u>, 655 F.3d 136, 141 (2d Cir. 2011)); <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190, 1198 (9th Cir. 1988)("A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a ruling on a question of law and as such, is reviewed *de novo.*")

<u>**STATEMENT OF THE CASE**</u>

A. <u>Nature of the Dispute</u>

At issue in this case is the tax foreclosure by Ontario County of Gliee and Brian Gunsalus' mortgage-free home for $1,236.52 in tax arrears, and Ontario County's seizure of ownership and all accumulated equity. It also concerns the Gunsaluses' right to avoid this transfer as a constructively fraudulent conveyance which failed to give them "reasonably equivalent value" under 11 U.S.C. § 548(a)(1)(B)(i). At the time of the tax foreclosure judgment, the value of the Gunsaluses' home was assessed at $45,000; it later sold at auction for $22,000. This was far greater than the amount of the tax liens for which the property was seized.

After Ontario County obtained a judgment of tax foreclosure on their home, which entitled it to possession and all equity in the property, the Gunsaluses filed a Chapter 13 bankruptcy and an Adversary Proceeding against Ontario County to avoid the transfer of their home as constructively fraudulent. The claim in the fraudulent conveyance action seeks to avoid the transfer of their home and pay off the tax arrears in full through their Chapter 13 plan.

Ontario County opposed the Gunsaluses' adversary proceeding, filing a motion to dismiss. The Bankruptcy Court granted Ontario County's motion to dismiss, reasoning that as a matter of law Ontario County was conclusively entitled to a presumption of "reasonably equivalent value" in tax foreclosure proceedings, and that accordingly, no claim for a fraudulent transfer was available to the Gunsaluses.

B. Disposition Below

The Bankruptcy Court granted Defendant-Appellee Ontario County's motion to dismiss the Gunsaluses' Adversary Proceeding Complaint in full with prejudice.

**STATEMENT OF FACTS**

A. The Gunsaluses

Mr. and Mrs. Gunsalus first purchased their home located at 1338 White Road, Phelps, Ontario County, New York, 14532 in 2002 from their family. A. at

13, ¶52. They have lived at the property for decades, and it has been in Mrs.

Gunsalus' family for generations. A. at 9, ¶20. Brian Gunsalus is disabled. He

relies on crutches or a wheelchair to ambulate due to his disability. A. at 9, ¶23.

Mr. and Mrs. Gunsalus also care for their adult disabled son, who resides with

them. A. at 9, ¶21. Mr. and Mrs. Gunsalus have a very limited income, and the

home is their only significant asset of value. A. at 9, ¶20-23. In 2015, the tax

assessment on the property was $45,000. A. at 8, ¶19. A private appraisal done in

2017 found that the home was worth $28,000. A. at 78. The home does not have a

mortgage payment and has low maintenance costs. A. at 12, ¶48; A. at 13, ¶53.

In 2014, the Gunsaluses experienced a reduction in income and temporarily

fell behind on their 2014 and 2015 county and town taxes, due January 1, 2014 and

January 1, 2015. A. at 9, ¶24. During this period, Mrs. Gunsalus had a short-lived

reduction in hours, and then was laid off. A. at 9, ¶24. Even while they were

struggling to make ends meet, including during 2014 and 2015, the Gunsaluses

continued to pay the school taxes on their home, which otherwise would have been

re-levied onto their county taxes. A. at 10, ¶26. Since their temporary setback, Mrs.

Gunsalus' employment and income have stabilized, and the Gunsaluses can afford

the ongoing property tax payments to retain their home. A. at 9, ¶24. The

Gunsaluses resumed paying their taxes as soon as they could and are current on all

property and school taxes other than the $1,236.52 they owe for the 2014 and 2015

county and town taxes (and which were the subject of the foreclosure proceeding). A at 10, ¶26; A at 14, ¶57.

B. The Article 11 RPTL Tax Foreclosure

When prosecuting tax foreclosures, Ontario County is bound by New York Real Property Tax Law Article 11 (hereafter "Article 11 RPTL" or "RPTL"). A. at 7, ¶12. A tax foreclosure under Article 11 RPTL is a strict forfeiture. In Ontario County, once a homeowner has missed the deadline to redeem, the county obtains a judgment of foreclosure which foreclosures all ownership interest and equity of redemption. A. at 7, ¶13. Article 11 RPTL allows municipalities or county jurisdictions to adopt a voluntary protection for homeowners from losing their homes by allowing them to apply for a repayment plan for property tax arrearages. RPTL §§ 1138(e) and 1184. Ontario County has declined to adopt this voluntary protection. A. at 7, ¶14. Ontario County has likewise not adopted any post-redemption buy-back provisions or other procedures for permitting a homeowner to redeem after the deadline. A. at 7, ¶14. On October 2, 2015, Ontario County commenced the *in rem* tax foreclosure action, and served the Gunsaluses with notice that the deadline to redeem their home from foreclosure and serve an answer to the lawsuit was January 15, 2016. A. at 10, ¶27.

The Gunsaluses made substantial efforts to meet their tax obligations before the deadline to redeem. A. at 10, ¶26. Mrs. Gunsalus contacted Ontario County

about a repayment plan, but was advised it was unavailable. A. at 10, ¶26. The

Gunsaluses also contacted Legal Assistance of Western New York (LawNY), a

civil legal services provider. A. at 10, ¶26. LawNY assisted the Gunsaluses in

applying for a loan to pay off the arrears through the New York State Mortgage

Assistance Program (MAP). A. at 10, ¶28. MAP is a state program which provides

interest-free loans to low-income homeowners to avoid foreclosure. A. at 10, ¶28.

On January 11, 2016, the Gunsaluses were approved for a loan through MAP, and

were set to close on the loan in the days before Ontario County's deadline to

redeem. A. at 10, ¶28. The final hurdle was documentation from Mrs. Gunsalus'

aunt. A. at 10, ¶28-29. She held an old mortgage which was paid off but for which

no satisfaction had been filed, and confirmation of this status was needed in order

to finalize the loan closing. A. at 10, ¶29. However, Mrs. Gunsalus' aunt

unexpectedly died on January 13, 2016, two days after the loan was approved and

two days before the deadline to redeem--and before signing a statement confirming

satisfaction of mortgage. A. at 10, ¶30. Despite the loan approval and its guarantee

of full tender, Ontario County was unwilling to allow the Gunsaluses a short

extension of the deadline in order to get alternative documentation and close on the

loan. A. at 11, ¶31. On January 15, 2016, Mrs. Gunsalus filed an answer to the *in

rem* proceeding to seek additional time to redeem. A. at 11, ¶32-33. Ontario

County opposed the application. A. at 11, ¶34.

On June 1, 2016, the Ontario County Court denied Mrs. Gunsalus'

application for an extension of time to redeem, and granted a judgment of tax

foreclosure to Ontario County. A. at 11, ¶35.  The judgment authorized Ontario

County to record a deed conveying to Ontario County full and complete title to Mr.

and Mrs. Gunsalus' home and barred them from any right, title, interest, claim, lien

or equity of redemption in their home. A. at 11, ¶36; RPTL § 1136(2)-(3).

After Ontario County obtained a judgment of foreclosure, Ontario County

nevertheless continued to bill the Gunsaluses for newly-accruing property taxes. A.

at 11, ¶38. The Gunsaluses have continued to pay all property taxes which accrued

since entry on June 1, 2016 of the judgment of tax foreclosure. A. at 11, ¶38.

<u>C. The Chapter 13 Proceeding</u>

On April 28, 2017, Mr. and Mrs. Gunsalus filed a Chapter 13 Plan providing

for payment of the entire $1,236.52 in tax arrears. A. at 12, ¶¶44, 45. Chapter 13

proceedings are consumer bankruptcy proceedings with a duration of three to five

years. 11 U.S.C. §§ 1321-1330. A Chapter 13 Plan proposes to pay arrears to

secured creditors and to pay disposable income to unsecured creditors. <u>Id</u>. The

debtor makes payment to a Chapter 13 trustee, who in turn, disburses funds to the

creditors. 11 U.S.C. § 1326. To qualify for a Chapter 13, the debtor must present a

plan that is feasible (11 U.S.C. § 1325(a)(6)); that provides for payments to

unsecured creditors of any disposable income (11 U.S.C. § 1325(b)(1)(B)); and

8

that is proposed in good faith (11 U.S.C. § 1325(a)(3)). Under Chapter 13, the County retains its lien until the County's secured claim for arrears is paid in full. 11 U.S.C. § 1325(a)(5)(B)(i)(1).

Under their Chapter 13 plan, the Gunsaluses are paying 100 percent of the property tax arrears owed to Ontario County, all on-going property tax bills, and 20 percent of the amount they owe to their remaining creditors. A. at 12, ¶¶45, 46. Under the Gunsaluses' Chapter 13 Plan, a wage deduction provides funds for the Chapter 13 Trustee to pay the property tax arrears. A. at 12, ¶46.

D. The Adversary Proceeding

On May 3, 2017, the Gunsaluses filed an Adversary Proceeding against Ontario County, seeking to avoid the transfer of their home in tax foreclosure as constructively fraudulent pursuant to 11 U.S.C.§ 548(a)(l )(B) and 11 U.S.C. § 522(h), and bring it into the estate as described in their Chapter 13 plan. A. at 5-17.

After the filing of the Adversary Proceeding on May 3, 2017, Ontario County continued to list the Gunsaluses' home for sale in a county-wide tax foreclosure auction, scheduled for May 17, 2017. See A. at 18. On May 15, 2017, the Gunsaluses filed a Motion for Temporary Restraining Order and Preliminary Injunction (TRO), which was heard on an expedited basis and ultimately settled by stipulated order of the parties. See A at 18. On May 17, 2017, the Bankruptcy Court granted the stipulated order, requiring Ontario County to notify the bidders

at the auction that title to the Gunsaluses' parcel was in dispute. A. at 18-19.  The

order also restrained Ontario County from transferring title to a third party as a

result of the auction until a determination of the adversary proceeding. A. at 18-19.

The auction proceeded pursuant to the stipulation, with bidders placed on

notice that the property was subject to litigation. A. at 93. The highest bidder bid

$22,000 for the property. A. at 93, 95.

On July 31, 2017, Ontario County filed a Motion to Dismiss the Gunsaluses'

Adversary Proceeding, A. at 28-72, which was opposed by the Gunsaluses. A. at

73-96. On November 6, 2017, the Bankruptcy Court issued a Decision and Order

granting Ontario County's Motion to Dismiss the Gunsaluses' Adversary

Proceeding. A. at 97-114. The Decision vacated the May 17, 2017 Stipulated Order

which enjoined Ontario County from transferring the subject premises. A. at 114.

E. The Decision Below

On November 6, 2017, the Bankruptcy Court issued a decision granting

Ontario County's Motion to Dismiss the adversary proceeding pursuant to FRCP

12(b)(6). A. at 97; Gunsalus v. Ontario Cty., New York, 576 B.R. 302 (Bankr.

W.D.N.Y. 2017). The Bankruptcy Court issued a single decision concerning both

this case and another case against Ontario County with similar facts raising the

same legal arguments; however, the cases were not joined or consolidated.

Gunsalus, 576 B.R. at n. 1. The Court found that the Gunsaluses' complaint would

survive a motion to dismiss on the first three elements of a fraudulent transfer

claim under 11 U.S.C. § 548: an interest in the property, that the transfer took place

within two years of filing of the bankruptcy, and insolvency. 576 B.R. at 307. The

Court also found that the Gunsaluses' complaint would survive a motion to dismiss

regarding all other defenses raised by Ontario County. Id.

As to the fourth element, the Bankruptcy Court held that because the

foreclosure action was conducted in compliance with the notice requirements of

Article 11 RPTL:

> [T]he Debtors cannot allege any set of facts that would tend to
> prove the absence of "reasonably equivalent value," a necessary
> element to a claim under 11 U.S.C. § 548(a)(1)(B)(i).

Gunsalus, 576 B.R. at 307.

The Bankruptcy Court accordingly held that Ontario County was entitled to

an irrebuttable presumption of having provided "reasonably equivalent value",

relying upon the rationale of BFP v. Resolution Trust Corp., 511 U.S. 531 (1994),

which concerned the determination of "reasonably equivalent value" in the context

of *mortgage* foreclosures by sale conducted in accordance with state law.

Gunsalus, 576 B.R. at 312-13.

The Bankruptcy Court had examined this issue previously in a Chapter 11

case from 2014, Canandaigua Land Dev., LLC v. County of Ontario (In re

Canandaigua), 521 B.R. 457 (Bankr. W.D.N.Y. 2014) (Warren, J.), *and vacated*,

2017 WL 2821874, 2017 Bankr. LEXIS 1840 (June 29, 2017). In that case the Bankruptcy Court held that Ontario County was not entitled to a presumption of reasonably equivalent value. In re Canandaigua, 521 B.R. at 476. The Bankruptcy Court held that the Chapter 11 debtor in Canandaigua was able to avoid the transfer, as Article 11 RPTL lacked the procedural safeguards contemplated by BFP and its progeny, particularly "strict adherence to prescribed competitive bidding rules and auction procedures." 521 B.R. at 476, 478.

In the present decision, the Bankruptcy Court reexamined the application of BFP to Article 11 RPTL tax foreclosures and reconsidered its ruling in the 2014 Canandaigua case. The Bankruptcy Court stated that its decision in Canandaigua contained a "flawed application of the principles identified by the Supreme Court in BFP." Gunsalus, 576 B.R. at 304. The Bankruptcy Court concluded that the Article 11 RPTL tax foreclosure process of notice, an ample opportunity to redeem, and strict compliance with state statutes provided adequate protection to the homeowner, and entitled Ontario County to an irrebuttable presumption of "reasonably equivalent value" (notwithstanding the absence of the other factors listed in BFP, including publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures). Id. at 309, 312-13.

F. Post-Decision Proceedings

The Bankruptcy Court's ruling in this case was entered on November 6, 2017, which Plaintiffs-Appellants the Gunsaluses then appealed. A. at 97; A. at 115-16. On November 15, 2017, the Gunsaluses filed a Motion for Stay Pending Appeal. See A. at 117. On December 4, 2017, the parties entered into a Court-approved stipulation staying the November 6, 2017 Decision and Order and staying transfer of the property. A. at 117-118. The December 4, 2017 stipulated order of the Bankruptcy Court further suspended Chapter 13 confirmation proceedings pending appeal pursuant to FRBP Rule 8007. A. at 118. Under the terms of the stipulation, during the pendency of the appeal, Ontario County cannot transfer the property, and the Gunsaluses will continue to live in the home and make on-going property tax and bankruptcy payments pursuant to their Chapter 13 plan. A. at 118.

## SUMMARY OF THE ARGUMENT

The Gunsalus home was foreclosed on due to a tax lien of $1,236.52. A. at 10, ¶27. Their home was assessed at $45,000 and appraised for $28,000. A. at 8, ¶ 19; A. at 77. Following the Ontario County tax foreclosure auction the high bid was $22,000. A. at 75. Ontario County rather than the Gunsaluses is entitled to the entire surplus of $20,763.48. RPTL §§ 1131 and 1136(2) The Gunsaluses filed an adversary proceeding to avoid this result and pay Ontario County through their

Chapter 13 plan. A. at 5-17. Under the Bankruptcy Code, debtors can avoid pre-bankruptcy involuntary transfers of property under 11 U.S.C. § 548 when they are fraudulent or constructively fraudulent. 11 U.S.C. § 548(a)(1). "A central concern of federal bankruptcy law is "[e]quality of distribution among creditors," which lies at the heart of fraudulent transfer law. " In re Smith, 811 F.3d 228, 238 (7th Cir. 2016), cert denied, 137 S.Ct. 103 (2016)(internal citations omitted)(noting "the broader purposes of the Bankruptcy Code and its fraudulent transfer provisions to ensure both a fair distribution of the debtor's assets among creditors and a fresh start for the debtor"); See also Scott B. Ehrlich, *Avoidance of Foreclosure Sales as Fraudulent Conveyances: Accommodating State and Federal Objectives,* 71 Va. L.Rev. 933, 935–36; 951-52 (1985) (noting, in foreclosure context, that § 548 helps to protect against "an estate-depleting windfall to the purchaser at the expense of the debtor's creditors").

Ontario County is subject to the lack of  "reasonably equivalent value" standard established by 11 U.S.C. § 548(a)(1)(B)(i) for allowing a bankruptcy trustee, or pursuant to 11 U.S.C. § 522(h), a debtor, to avoid transfers of property which occur before a bankruptcy case is filed. There is no exception in the Bankruptcy Code which applies to local taxing authorities. Clinton Cty. Treasurer v. Wolinsky, 511 B.R. 34, 38–39 (N.D.N.Y. 2014).

The Bankruptcy Court incorrectly held that, as a matter of law, Ontario County was entitled to a conclusive presumption of having provided "reasonably equivalent value" when it foreclosed on Mr. and Mrs. Gunsalus' home and gained all equity thereby, in order to satisfy a lien for $1,236.52 in unpaid property taxes. Gunsalus v. Ontario Cty., New York, 576 B.R. 302, 313 (Bankr. W.D.N.Y. 2017).

The Bankruptcy Court also erred when it granted Ontario County's motion to dismiss the Gunsaluses' complaint to avoid the transfer of their home to Ontario County as constructively fraudulent because: i) the Supreme Court precedent relied upon by the Bankruptcy Court requires more than the procedures offered under Article 11 RPTL tax proceedings; ii) the value of the tax lien was substantially less than the value Ontario County will receive from the post-seizure auction of the Gunsaluses' home; iii) Compliance with Article 11 RPTL tax procedures and due process is not a substitute for the provision of a pre-seizure auction; and iv) the Gunsaluses have protected federal bankruptcy interests which were overlooked by the Bankruptcy Court's decision.

## ARGUMENT

## I.   THE BANKRUPTCY COURT MISAPPLIED A U.S. SUPREME COURT PRECEDENT WHEN FINDING THAT ONTARIO COUNTY PRESUMPTIVELY GAVE "REASONABLY EQUIVALENT VALUE" AS PART OF ARTICLE 11 TAX FORECLOSURES

**A. Article 11 tax foreclosures lack a pre-seizure auction, a key procedural safeguard identified in BFP as necessary for giving "reasonably equivalent value"**

In BFP v. Resolution Trust Corp., 511 U.S. 531 (1994), the Supreme Court held that regularly conducted mortgage foreclosure proceedings which result in distressed property values at foreclosure auctions satisfy the "reasonably equivalent value" standard of 11 U.S.C. § 548 and shield foreclosing mortgage holders from fraudulent conveyance actions. BFP, 511 U.S. at 545. The Supreme Court based its ruling on the existence of an auction or sale which would permit some degree of market forces to set the value of the property, even in distressed circumstances. 511 U.S. at 545-6. BFP defined "reasonably equivalent value" in the mortgage foreclosure context as "the foreclosure sale price" obtained at auction. Id. at 545. It declined to find that the irrebuttable presumption of "reasonably equivalent value" extends to tax foreclosures.  Id. at 537 n. 3.

Analyzing BFP, the Bankruptcy Court reasoned that market forces are unnecessary to meet the "reasonably equivalent value" standard, so long as there is notice, a long redemption period, and the foreclosure process is judicially supervised.

> Instead, *BFP* recognized three essential and necessary key protections common to all state foreclosure statutes: (1) notice; (2) ample opportunity to cure; and (3) strict adherence to the requirements of those state statutes.

<u>Gunsalus v. Ontario Cty., New York</u>, 576 B.R. 302, 310 (Bankr. W.D.N.Y. 2017).

However, the Bankruptcy Court omitted a critical fourth element of the <u>BFP</u> analysis: the requirement that state foreclosure proceedings provide for "strict adherence to prescribed bidding rules and auction proceedings." <u>BFP</u>, 511 U.S. at 542. While the Bankruptcy Court attempts to dismiss the omission of this important protection by suggesting that the <u>BFP</u> court was simply referring to procedures that are "typically required" and therefore not mandatory, a reading of the complete opinion makes clear that a pre-seizure bidding process was an essential element of the <u>BFP</u> holding. <u>Id</u>. The <u>BFP</u> court stated that only "[w]hen these procedures have been followed," including the auction procedures, does the inadequacy of the foreclosure sale price not provide grounds for setting aside a sale under state foreclosure law. <u>Id</u>.. This analysis formed the basis for the Supreme Court's holding in <u>BFP</u> that the phrase "reasonably equivalent value" should be construed consistently with state foreclosure law.

Many courts interpreting <u>BFP</u>, including several district or bankruptcy courts within the Second Circuit, have found that tax foreclosure proceedings fail to provide "reasonably equivalent value" where they lack the operation of market forces in determining value to the homeowner of the property. <u>In re Murphy</u>, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005)("Where property is seized without a sale or competitive bidding, there cannot be a presumption as a matter of law that

reasonably equivalent value was received because market forces were completely absent."); See also In re Smith, 811 F.3d 228, 240 (7th Cir. 2016)("We must enforce the federal bankruptcy remedy for fraudulent transfers where the reasoning of *BFP* does not apply"). The Bankruptcy Court's decision to apply the BFP presumption of "reasonably equivalent value" concerning conventional mortgage foreclosures to tax foreclosures is contrary to the weight of the case law. These cases include:  In re Smith, 811 F.3d 228 (7th Cir. 2016); In re Sherman, 223 B.R. 555 (B.A.P. 10th Cir. 1998);  Clinton Cty. Treasurer v. Wolinsky, 511 B.R. 34 (N.D.N.Y. 2014); Cty. of Clinton v. Warehouse at Van Buren St., Inc., 496 B.R. 278 (N.D.N.Y. 2013); City of Milwaukee v. Gillespie , 487 B.R. 916 (E.D. Wis. 2013) (hereafter "Gillespie"); In re GGI Properties, LLC, 568 B.R. 231 (Bankr. D.N.J. 2017); Matter of Varquez, 502 B.R. 186 (Bankr. D.N.J. 2013); In re Martyak, 432 B.R. 25 (Bankr. N.D.N.Y. 2010)(fraudulent transfer claim denied on other grounds); In re Murphy, 331 B.R. 107 (Bankr. S.D.N.Y. 2005); In re Herkimer Forest Prod. Corp., No. 04-13978, 2005 WL 6237559, (Bankr. N.D.N.Y. 2005).

BFP held that a valid mortgage foreclosure sale presumptively provided "reasonably equivalent value," because over the years states have developed protections for mortgagors, including "foreclosure by sale (with the surplus over the debt refunded to the debtor) as a means of avoiding the draconian

consequences of strict foreclosure." BFP, 511 U.S. at 541. BFP also noted other

protections, including "notice to the defaulting borrower, a substantial lead time

before the commencement of foreclosure proceedings, publication of a notice of

sale, and strict adherence to prescribed bidding rules and auction procedures." Id.

at 542.

By contrast, New York's tax foreclosure scheme, which does not return to

the homeowner the proceeds of the sale and allows a property to be forfeited due to

a tax debt many times smaller than the value at auction, is like the type of strict

foreclosure which BFP noted rarely occurs in the mortgage context. To the extent

there is competitive bidding in a tax foreclosure sale under Article 11 RPTL, it

does not serve to benefit the homeowner as it would in the mortgage foreclosure

context because the debtor does not receive the surplus proceeds, and the auction

takes place after a homeowner's forfeiture of any interest in the property. Murphy,

331 B.R. at 120; see also Gillespie, 487 B.R. at 920.

Many of the justifications that BFP gave for reaching its holding in the

mortgage foreclosure context do not exist in New York's tax foreclosure scheme

under Article 11 RPTL.

The three factors referred to by the Bankruptcy Court are not a substitute for

market forces because they omit the protection afforded by an auction procedure.

BFP requires that foreclosing entities provide  "strict adherence to prescribed

bidding rules and auction proceedings" where market forces can establish the value of a property. BFP, 511 U.S. at 542. Ontario County failed to do this, and the Bankruptcy Court failed to properly analyze this element of BFP when it granted Ontario County's motion to dismiss.

### B. There is no presumption of reasonably equivalent value where there is no relationship between asset seized and value given

There is no relationship between the value of the homes that Ontario County seizes and the tax liens that it seizes them for in tax foreclosures conducted under Article 11 RPTL. See Cty. of Clinton v. Warehouse at Van Buren St., Inc., 496 B.R. 278, 283 (N.D.N.Y. 2013)(hereafter "Van Buren"). The Bankruptcy Court's ruling is contrary to the decisions of other federal courts in in New York which have held that Article 11 RPTL fails to provide "reasonably equivalent value" to property owners in tax foreclosure. These courts have found that the lack of relationship between the value of the property and the tax lien is decisive and that the avoidance remedy under bankruptcy law applies, if other eligibility requirements are met. See, e.g., Van Buren, 496 B.R. at 282.

A determination of "reasonably equivalent value" for purposes of avoiding a transfer under Section 548 of the Bankruptcy Code is made by comparing the value of what was transferred to what was received. Barber v. Golden Seed Co., 129 F.3d 382, 387 (7th Cir. 1997). In the context of a mortgage foreclosure, this bankruptcy standard is met by providing the property owner with the price that

actually was (or would have been) received at a regularly-conducted foreclosure sale. BFP, 511 U.S. at 545-46. The Supreme Court reasoned that distressed property is worth less than fair market value and that an auction provides for the operation of market forces to determine value under those altered circumstances. 511 U.S. at 547-49. In a strict foreclosure like a tax sale under Article 11 RPTL, however, this analysis quickly crumbles.

This point was made in a Northern District of New York decision that granted avoidance relief with respect to Article 11 RPTL proceedings:

> As the *Herkimer, Balaber–Strauss,* and *Harris* courts reasoned, "the 'amount of a tax lien is no evidence whatsoever of the property's value' and, thus, there [can] be no presumption that the debtor received reasonably equivalent value" as in the *BFP* mortgage foreclosure scenario.

Van Buren, 496 B.R. at 283.

A similar point was made in a Southern District of New York decision, which held that even allowing for New York's strong interest in enforcing tax collection:

> Where property is seized without a sale or competitive bidding, there cannot be a presumption as a matter of law that reasonably equivalent value was received because market forces were completely absent. Unlike in a mortgage foreclosure under New York law, where the market is redefined, the market is completely destroyed by New York tax forfeiture proceedings.

In re Murphy, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005).

The Bankruptcy Court's decision is also contrary to the weight of the case law outside of New York State. Recently, the Seventh Circuit Court of Appeals issued a comprehensive decision which upheld a homeowner's avoidance proceeding in a case in which the homeowner lost title in the Illinois tax foreclosure process.  In re Smith, 811 F.3d 228, 234 (7th Cir. 2016). The Illinois tax foreclosure process involved sale of tax liens to private parties, which could ultimately result in the homeowner forfeiting title without any reimbursement for lost equity.  Id. at 237. The court, in finding that the Illinois tax authority was not entitled to an irrebuttable presumption of "reasonably equivalent value", stated: "[In] an Illinois tax sale, there is 'no correlation between the sale price and the value of the property.'" Id. at 238.

In the same manner, a district court in Wisconsin, after a careful analysis of the bankruptcy court's opinion below, concluded that the taxing authority was not entitled to a conclusive presumption of reasonably equivalent value without a public sale offering. Gillespie, 487 B.R. at 920.

Likewise, a bankruptcy court within the Second Circuit, the Bankruptcy Court for the District of Connecticut, upheld an avoidance proceeding after loss of title in a property tax foreclosure context.  The court noted that the State's:

> forfeiture procedure eliminates rather than redefines the market. While the forced sale price may be legitimate evidence of the property's value, the amount of a tax lien is *no* evidence whatsoever of the property's value.

In re Wentworth, 221 B.R. 316, 320 (Bankr. D. Conn. 1998).

Similarly, a bankruptcy court in New Jersey upheld an avoidance proceeding after finding:

> Under the New Jersey Tax Sale Law, at the point of the entry of a judgment of foreclosure, there is no sale, forced or otherwise. There is simply the foreclosure of the debtor's equity of redemption, and the transfer of a fee simple interest in the property to the tax sale certificate holder.

Matter of Varquez, 502 B.R. 186, 192 (Bankr. D.N.J. 2013).

Article 11 RPTL, like the New Jersey statute at issue in Matter of Varquez, is a strict foreclosure tax regime that lacks the return to the property owner of any surplus or a pre-seizure auction. There is no relationship between the value of the property seized by a county and the value received in return by debtors. Matter of Varquez, 502 B.R. at 193. The features of Article 11 RPTL, like Connecticut's statute, "eliminate[] rather than redefine[] the market." In re Wentworth, 221 B.R. at 320. The Gunsaluses, accordingly, lost their home and all accumulated equity over just $1,236.52 in tax arrears, despite a post-seizure auction establishing that the home is worth significantly more than that. This disparity between the value of the property and the value of the tax lien should have precluded Ontario County from an irrebuttable presumption of "reasonably equivalent value", and the Bankruptcy Court erred in holding otherwise.

**C. There is no presumption of reasonably equivalent value when Article 11 proceedings provide for the County, rather than the Gunsaluses, to retain the surplus from an auction held after the property has been foreclosed**

Many courts interpreting <u>BFP</u> have also focused on whether the state procedures provide a way for debtors to recover equity. In mortgage foreclosures by sale there is an auction before seizure, and the mortgagor can recover a surplus after the mortgage debt is paid in full. New York Real Property Actions and Proceedings Law (NY RPAPL) § 1361(3); <u>BFP</u>, 511 U.S. at 541. In Article 11 RPTL tax foreclosures, however, the property is forfeited before any auction occurs.  <u>Murphy</u>, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005)("[Article 11 RPTL] does not require a sale whatsoever, unlike New York mortgage foreclosure proceedings. If an owner does not redeem or answer in the tax forfeiture proceeding, the taxing authority gets title to the property in fee simple.") Accordingly, market forces have no impact on the value received by the debtor and, in fact, the debtor receives no value at all with the complete forfeiture under the Article 11 RPTL regime. <u>Id.</u> at 120 ("Unlike in a mortgage foreclosure under New York law, where the market is redefined, the market is completely destroyed by New York tax forfeiture proceedings.")

Bankruptcy cases from other jurisdictions which have denied debtors' avoidance claims against taxing jurisdictions have typically pointed to an

opportunity to redeem surplus proceeds. These courts often identify return of equity to debtors as a key element which renders certain tax foreclosure systems more akin to mortgage foreclosures. For instance, the Ninth Circuit Court of Appeals noted that the California tax foreclosure process permits the homeowner to file a claim against the proceeds of the auction if in excess of the liens and costs. In re Tracht Gut, LLC, 503 B.R. 804, 818 (B.A.P. 9th Cir. 2014), aff'd, 836 F.3d 1146 (9th Cir. 2016). Similarly, a bankruptcy court within the Second Circuit, the Bankruptcy Court for the District of Connecticut, rejected an avoidance proceeding involving a tax foreclosure, noting the proceeds of the auction had been deposited in a fund against which the owner and the lien holders could make a claim:

> Thereafter, the Town was paid the entirety of its unpaid taxes and the balance of the funds, after said taxes, fees and charges in the amount of $64,440.79 was deposited with the Tolland Superior Court pursuant to Conn. Gen. Stat. § 12–157(i)(1)(B), subject to claim by owners and/or encumbrancers.

In re Jacobson, 523 B.R. 13, 16 (Bankr. D. Conn. 2014).

By contrast to the cases above, tax foreclosure proceedings under Article 11 RPTL are absolute in depriving the homeowner of any recovery of equity once the redemption period expires. RPTL §§ 1131 and 1136(2). When Ontario County takes title to a home under Article 11 RPTL, the only value given to homeowners is satisfaction of their tax debts. Moreover, because property tax debts are an *in rem* rather than an *in personam* obligation, the Gunsaluses receive no benefit once

their interest in the property is foreclosed. The forfeiture of the homeowner's

interest in the property occurs before any auction, and any market forces that bear

at the post-forfeiture auction have no impact whatsoever on the value given to a

homeowner. <u>Murphy</u>, 331 B.R. at 120. Unlike a mortgage foreclosure, any surplus

from the post-forfeiture auction is retained by Ontario County and not given to the

homeowner. RPTL §§ 1131 and 1136(2).

Mr. and Mrs. Gunsalus and their disabled adult son, a low income family,

live in a small town in Ontario County. A. at 8, ¶18, 20-23. They obtained a private

appraisal of their home at $28,000. A. at 77-91. The County foreclosed on the

Gunsalus' home for back taxes of $1,236.52, when they were unable to pay this

amount during the redemption period. A. at 10, ¶27. At the auction which followed

the County's judgment of foreclosure, the high bid was $22,000. A. at 75. Under

Article 11 RPTL, the Gunsaluses have no right to the surplus of $20,763.48. RPTL

§§ 1131 and 1136(2). Instead this surplus is a windfall for the County.

## II. USING <u>BFP</u>'s STANDARD FOR DETERMINING "REASONABLY EQUIVALENT VALUE", ONTARIO COUNTY WAS NOT ENTITLED TO A CONCLUSIVE PRESUMPTION OF "REASONABLY EQUIVALENT VALUE"

Ontario County's foreclosure of the Gunsaluses' home was a constructively

fraudulent transfer under <u>BFP</u>'s formulation of "reasonably equivalent value", as

Article 11 RPTL's procedures did not give the Gunsaluses "the foreclosure-sale

price itself" of $22,000 in exchange for seizure of their home. BFP, 511 U.S. at

547. BFP accepted the premise that mortgage foreclosure sales must meet a

"reasonably equivalent value" standard or be subject (assuming other bankruptcy

requirements are met) to avoidance proceedings. BFP noted that the phrase

"reasonably equivalent" does not have a statutory definition. 511 U.S. at 536. In

formulating a standard, BFP framed the question as "What is a foreclosed property

worth?" Id. at 547. It summarized its conclusion as follows: "We have considered

three … possible answers to this question—fair market value, reasonable forced-

sale price and the foreclosure-sale price itself—and have settled on the last." Id. at

547 (internal citations omitted). The BFP decision concludes, "[T]the only

legitimate evidence of the property's value at the time it is sold is the foreclosure-

sale price itself.  Id. at 549.

By this formulation, the value of the Gunsalus home was $22,000, the high

bid at the foreclosure auction.[1]  A. at 93, 95. However, the amount of back taxes

---

[1] Because a forced auction occurred in this case, it allows this Court the benefit of knowing what the property is worth under distressed conditions. Applying the BFP rule, the "reasonably equivalent value" is no less than the forced sale price. The Court need not decide in this case the "reasonably equivalent value" of a foreclosed property in situations where no auction has yet occurred. In such situations some courts have made comparisons between the property's market value and the amount of the tax debt. See In re Herkimer Forest Prod. Corp., No. 04-13978, 2005 WL 6237559, at *4 (Bankr. N.D.N.Y. 2005) ("The value of the Properties is approximately 11 times the debt. Clearly, the value of the Properties is not proportional to the Debtor's tax debt, and the transfer is voidable as fraudulent under Code § 548."). See also In re Wentworth, 221 B.R. 316, 320 (Bankr. D. Conn. 1998) ("The court concludes that the transfer of a debtor's real property with a market value of $20,700 for a tax lien of $1,515.63, pursuant to the forfeiture procedure, is not for reasonably equivalent value."). These cases demonstrate that a Court need not know what the property would fetch at a forced sale in order to avoid a demonstrably one-

which would be satisfied by the forfeiture of the home was $1,236.52. A. at 59. By

BFP's own terms, the foreclosure sale price of $22,000 is the relevant figure, all of

which is retained by the County rather than returned to the Gunsaluses under

Article 11 RPTL. RPTL §§ 1131 and 1136(2); See BFP, 511 U.S. at 545 ("We

deem, as the law has always deemed, that a fair and proper price, or a 'reasonably

equivalent value,' for foreclosed property, is the price in fact received at the

foreclosure sale….").

Because there is no pre-seizure auction, and the County receives the full

benefit of any surplus from the post-seizure auction, the Gunsaluses did not receive

"reasonably equivalent value" under BFP for the loss of their home. Ontario

County is required to give "reasonably equivalent value" to the Gunsaluses, or be

subject to avoidance proceedings under 11 U.S.C. § 548. In re Smith, 811 F.3d

228, 240 (7th Cir. 2016); Clinton Cty. Treasurer v. Wolinsky, 511 B.R. 34, 38–39

(N.D.N.Y. 2014). It failed to do so, and the Bankruptcy Court ignored this in

granting Ontario County a conclusive presumption of having provided "reasonably

equivalent value".

## III. THE BANKRUPTCY COURT'S RELIANCE ON DUE PROCESS CASE LAW TO DETERMINE SUFFICIENCY OF A TRANSFER UNDER 11 U.S.C. § 548 IS MISPLACED

---

sided transaction. The Gunsaluses are on even stronger ground than those in Herkimer and Wentworth because this Court has the benefit of seeing the results of a forced sale, which made it all the more apparent that "reasonably equivalent value" was not provided.

Strict adherence with Article 11 RPTL tax foreclosure procedures is insufficient to compensate for the lack of market forces in New York's tax foreclosure system, and will not prevent constructively fraudulent transfers of property from homeowners to taxing jurisdictions like Ontario County. Avoidance proceedings under 11 U.S.C. § 548 are a statutory remedy available to homeowners faced with this situation. The Bankruptcy Court erred in relying on non-bankruptcy cases concerning due process challenges, rather than compliance with 11 U.S.C. § 548 requirements, to deny this federal bankruptcy remedy to Mr. and Mrs. Gunsalus.

The Bankruptcy Court erroneously relied on a non-bankruptcy case for the proposition that state court procedures of notice and an extended redemption period will compensate for the lack of a pre-seizure auction with competitive bidding in the tax foreclosure process. Gunsalus v. Ontario Cty., New York, 576 B.R. 302, 310 (Bankr. W.D.N.Y. 2017)(citing Nelson v. City of New York, 352 U.S. 103 (1956)). However, New York state court procedures are limited, and unable to provide relief for the financial hardships and extraordinary occurrences which are contemplated by bankruptcy law remedies. Mr. and Mrs. Gunsalus, who experienced a temporary decline in their limited income, were unable to obtain the necessary funds to pay off the back taxes before the redemption period expired. A. at 9, ¶24-39. Before expiration of the redemption deadline they applied for relief

through a state-sponsored program, the Mortgage Assistance Program (MAP), which provides no-interest loans to prevent foreclosure. A. at 10, ¶28. But they ran into a last-minute title obstacle, due to an unexpected death of a relative holding an old mortgage, before a satisfaction could be filed. A. at 10, ¶29-30. The County then opposed the brief extension of time needed to rectify the title issue and took steps to obtain a judgment of tax foreclosure. A. at 11, ¶31, 34. The Gunsaluses sought relief in State court. A. at 11, ¶33.

However, the judicial oversight provided by the state tax foreclosure statute is limited to technical requirements of the foreclosure. Murphy, 331 B.R. 107, 126 (Bankr. S.D.N.Y. 2005). Moreover, under Article 11 RPTL, inadequacy of price is not a basis for setting aside a tax foreclosure judgment, and there is no procedure for requesting the return of any surplus. 331 B.R. at 127.

The Bankruptcy Court's reliance on Nelson was misplaced. Gunsalus, 576 B.R. at 310, citing Nelson, 352 U.S. 103 (1956)). Nelson involved a broad constitutional attack on the tax foreclosure process. The appellants in that case claimed that the disparity in the fair market value of their property and the tax lien which resulted in a foreclosure raised due process and other Constitutional issues. Accordingly, the Nelson court was tasked with evaluating whether the appellants had received due process and just compensation under the Constitution. By contrast, at issue for the Gunsaluses is the scope of a specific statutory remedy

enacted by Congress as part of the Bankruptcy Code pursuant to its powers under

U.S. Const. Art. I, Section 8, cl. 4. cf. BFP, 511 U.S. at 567, (Souter, J.,

dissenting). An avoidance proceeding such as that at issue in this case is a

statutorily-enacted tool in support of comprehensive bankruptcy relief for debtors.

In re Smith, 811 F.3d 228, 238 (7th Cir. 2016)(noting "the broader purposes of the

Bankruptcy Code and its fraudulent transfer provisions to ensure both a fair

distribution of the debtor's assets among creditors and a fresh start for the debtor").

This remedy is based on the statutory bankruptcy standard of "reasonably

equivalent value". 11 U.S.C. § 548(a). The legal theories for recovery claimed by

the Nelson appellants are entirely distinct, and inapplicable to the present case.

Nelson, 352 U.S. at 104.

Nelson is also factually distinguishable in a significant fashion.  The

homeowners in that case had the opportunity to apply for a separate sale in which

they could seek recovery of the surplus.  The Nelson court stated,  "[W]e do not

have here a statute which absolutely precludes an owner from obtaining the surplus

proceeds of a judicial sale." 352 U.S. at 110. By contrast, Article 11 RPTL has no

provision for a homeowner to seek the surplus from the auction. The loss of the

homeowner's equity is absolute. RPTL §§ 1131 and 1136.

This limitation on Nelson was noted in a subsequent decision challenging

tax foreclosure proceedings in the District of Columbia:  "Nelson makes clear that

a Takings Clause violation regarding the retention of equity will not arise when a tax-sale statute provides an avenue for recovery of the surplus equity." Coleman through Bunn v. D.C., 70 F. Supp. 3d 58, 80 (D.D.C. 2014).

The Bankruptcy Court also cites a decision from the Second Circuit Court of Appeals which rejects a constitutional challenge to Article 11 RPTL proceedings, even without a remedy for recovery of the surplus. Gunsalus, 576 B.R. at 311 (citing Miner v. Clinton Cty., N.Y., 541 F.3d 464, 475 (2d Cir. 2008) cert. denied., 556 U.S. 1128 (2009)). In that case, the Second Circuit Court of Appeals stated: "The retention of any surplus from a tax auction is constitutional because there was no violation of plaintiffs' right to due process related to the notices of foreclosure." Miner, 541 F.3d at 475. However, the Miner decision was based almost entirely on due process grounds. 541 F.3d at 466-67. It does not apply to the specific bankruptcy remedy of avoidance proceedings, which in a bankruptcy context provides basic protection for homeowners and serves compelling bankruptcy interests.

While strict adherence to state court procedures might satisfy the constitutional requirements of due process, unlike the plaintiffs in Nelson and Miner, the Gunsaluses are not raising a due process challenge to the tax foreclosure. They are instead asserting their right under bankruptcy law to avoid the transfer as a fraudulent conveyance, and in order to shield itself from this right,

the County must satisfy a different burden. It must show that it has given

"reasonably equivalent value" under 11. U.S.C. § 548, and for this, strict adherence

to state court procedures is not sufficient. <u>Gillespie,</u> 487 B.R. at 920 ("The court is

not persuaded that "reasonably equivalent value" was received as a matter of law

simply because the City complied with the foreclosure statute"); <u>See also In re</u>

<u>Sherman,</u> 223 B.R. 555, 559 (B.A.P. 10th Cir. 1998)(rejecting the argument that

<u>BFP</u> stands for the proposition that as long as a tax foreclosure and sale are

conducted in accordance with the law that reasonably equivalent value was

obtained). The Bankruptcy Court's reliance on cases concerning due process

challenges is misplaced.

## IV. THE BANKRUPTCY COURT'S DECISION FAILS TO RECOGNIZE THE STRONG BANKRUPTCY INTERESTS IN GRANTING 11 U.S.C. § 548 RELIEF TO THE GUNSALUSES

### A. Avoiding the transfer furthers the recognized bankruptcy interests of protecting exempt assets, ensuring debtors a fresh start, and enabling the success of reorganizations for the benefit of all creditors

Recovery by Mr. and Mrs. Gunsalus of title to their home is essential for the

success of their Chapter 13 Plan. If allowed to stand, the Bankruptcy Court's

decision would render this family of low-income homeowners homeless and

destroy the prospects that they can repay their creditors—not just Ontario

County—in their Chapter 13 bankruptcy. As there is no outstanding mortgage, the

Gunsaluses' housing costs are minimal, allowing them to make payment to their

unsecured creditors from their modest income. A. at 12, ¶48; A. at 13, ¶53. The

Chapter 13 Plan would repay the County, in full, for the back taxes, maintain

payment of newly issued property taxes as they become due, lower their car

payments (necessary for work) through an interest rate reduction and make

payments to their unsecured creditors of their disposable income. A. at 12, ¶45-46.

The County's tax lien would remain intact throughout the Chapter 13 Plan. 11

U.S.C. § 1325(a)(5)(B)(i)(1). The County retains the right to move for dismissal if

not paid according to the Plan. 11 U.S.C. § 362.

The Bankruptcy Code was designed in large part to ensure a fair distribution

among creditors and a fresh start for the debtor. In re Smith, 811 F.3d 228, 239

(7th Cir. 2016); In re Chase, No. 02-10582, 2005 WL 189711, at *7 (Bankr. D. Vt.

2005)("[T]his Court must examine the applicability of the fraudulent conveyance

statute against the debtor's right to a fresh start and each creditor's right to equal

treatment. These principles constitute the bedrock underlying the bankruptcy

system."). Mr. and Mrs. Gunsalus have a strong bankruptcy interest in being

granted 11 U.S.C. § 548 relief in order to accomplish their Chapter 13 plan, protect

their homestead exemption and benefit their creditors. Their Chapter 13 plan

includes payment of 100 percent of the property tax arrears owed to Ontario

County and 20 percent to the rest of their creditors. A. at 6, ¶2.

34

Protection of assets critical to a reorganization is also a key bankruptcy interest at stake in this case. Mr. and Mrs. Gunsalus are a low-income household whose family has owned their home for multiple generations. A. at 7, ¶ 9. The home has a tax appraisal of $45,000 and a private appraisal of $28,000. A. at 8, ¶ 19; A. at 77. The home does not have a mortgage payment and has low maintenance costs. A. at 12, ¶48; A. at 13, ¶53. Avoiding the transfer would allow the Gunsaluses to keep their only sizeable asset, while paying Ontario County back in full. Moreover, due to the low housing costs, it would also ensure that they have adequate disposable income in their budget to repay their other creditors through the Chapter 13 plan.

Retention of their home invokes the important bankruptcy interest of granting them a fresh start and preserving their homestead exemption, pursuant to 11 U.S.C. § 522(d)(1). The Bankruptcy Code recognizes the importance of exemptions by permitting debtors, such as Mr. and Mrs. Gunsalus, to file an avoidance proceeding action under Section 548, even if the Chapter 13 trustee declines to do so, if the object is recovery of an exempt asset. 11 U.S.C. § 522(h). Due to the Gunsaluses' limited income, retention of their home is essential for the success of their Chapter 13 reorganization and to provide payment to their unsecured creditors. A. at 12, ¶48.

A U.S. Bankruptcy Court for the Southern District of Iowa, reviewing a case in which a debtor sought to preserve farming equipment against a challenge that it was not exempt, summarized the basic purposes of preserving exempt property as follows:

1. To provide a debtor enough money to survive.
2. To protect his dignity and his cultural and religious identity.
3. To afford a means of financial rehabilitation.
4. To protect the family unit from impoverishment.
5. To spread the burden of the debtor's support from society to his creditors.

Matter of Hahn, 5 B.R. 242, 244 (Bankr. S.D. Iowa 1980).

The purpose of preserving exempt property in bankruptcy is to allow debtors to obtain a fresh start with dignity and without having to struggle for the basic necessities:

Historically, the purpose of exemption laws has always been to allow debtors to keep those items of property deemed essential to daily life. . . .

In the bankruptcy context, exemptions serve the overriding purpose of helping the debtor to obtain a fresh start. They allow the debtor to come out of the process with not only a minimum amount of dignity, but also the essentials upon which to build a new life. They leave at least the basic necessities, chosen by the debtor from the possessions that the debtor has acquired over a lifetime, so that the debtor may proceed to move forward, rather than spend time struggling simply to exist.

NCLC Consumer Bankruptcy Law and Practice, s 10.1.3.

The ability to avoid pre-petition transfers utilizing the "reasonably equivalent value" standard is integral to this design.

## B. Avoidance proceedings will not unduly impair state interests or prejudice Ontario County

Courts considering these issues have routinely found that avoidance proceedings by debtors under Section 548 do not unduly burden states' interests. See, e.g. Gillespie, 487 B.R. at 921 (rejecting the city's "catastrophesizing" argument); In re Herkimer Forest Prod. Corp., No. 04-13978, 2005 WL 6237559 at *4, n.8 (Bankr. N.D.N.Y. 2005)("The provisions of NYRPTL are not rendered invalid by this decision ...Whether the transfer is in fact avoidable would have to be determined on a case by case basis"); In re Wentworth, 221 B.R. 316, 320 (Bankr. D. Conn. 1998)("[T]his ruling does not "displace" Maine's forfeiture procedure but merely impinges on it to the extent that forfeited properties may be the subject of § 548 fraudulent transfer actions").

In the instant case, the County raised the specter of interference with titles from foreclosure auctions if avoidance proceedings are permitted. However, these fears of title destabilization do not apply to Chapter 13 pre-auction proceedings like those filed by the Gunsaluses. Bidders were placed on notice of the avoidance proceeding concerning this specific tax parcel, pursuant to the Bankruptcy Court's order; thus title to other tax parcels was not impacted by the proceeding. See A. at 18-19.

Case 6:17-cv-06810-FPG Document 8 Filed 03/15/18 Page 45 of 54

In addition, as a secured creditor, Ontario County is to be made whole through the bankruptcy plan. As part of an avoidance proceeding under 11 U.S.C. § 548, the Gunsaluses are required throughout the term of their Chapter 13 Plan to pay the current property taxes as they are levied, in addition to paying the arrears, which the Gunsaluses have done. The Gunsaluses remain under the supervision of the Chapter 13 Trustee for three to five years. In the event the Gunsaluses fail to keep the commitments set forth in the Chapter 13 plan, the County may promptly move for relief from the automatic stay pursuant to 11 U.S.C. § 362 and resume the foreclosure process.

Even before filing for bankruptcy, the Gunsaluses resumed paying all post-judgment tax foreclosure payments and have continued to make all on-going payments since. Through the Chapter 13, Ontario County is currently receiving both the on-going tax payments as well as payments toward the 2014 and 2015 tax arrears. The avoidance proceeding does not relieve the Gunsaluses of the obligation to pay their taxes. The avoidance procedure only impairs the County's ability to profit from the Gunsaluses' misfortune.

**C. The Bankruptcy Court erroneously elevates the state's interests above the Gunsaluses' right to avoidance under the bankruptcy code and fails to account for the impact on other creditors**

The Bankruptcy Court's holding overlooks the debtors' statutorily-protected rights under the Bankruptcy Code. Chapter 13 is intended to balance the rights of debtors and creditors. As one bankruptcy court noted:

> By its terms, Vermont's strict foreclosure statute permits an unmitigated windfall to the mortgagor[sic], and that in turn, endangers the debtor's homestead exemption and fresh start, and deprives other creditors (the "bankruptcy estate") from a distribution that they would otherwise receive. This Court must balance the rights of the bankruptcy estate and debtor against the importance of title finality. In so doing, it finds that while it is quite possible for a strict foreclosure scheme to warrant a presumption of reasonably equivalent value, the Vermont statute does not.

In re Chase, No. 02-10582, 2005 WL 189711, at *7 (Bankr. D. Vt. 2005).

Similarly, under Article 11 RPTL, Ontario County receives a windfall at the expense of the Gunsaluses' ability to execute their Chapter 13 plan, preserve their homestead exemption, and make payments to all creditors - not just Ontario County. Since the Bankruptcy Code does not include an exception from avoidance proceedings for local taxing authorities, they are subject to the "reasonably equivalent value" standard.  The Bankruptcy Court for the Northern District of New York ruled that:

> There is simply no indication that Congress intended to carve out an exception for valid *in rem* state tax foreclosure proceedings. The County tacitly conceded this at oral arguments. The County instead presses a policy argument, asserting that Chief [Bankruptcy] Judge Littlefield's ruling hinders a municipality's right to collect unpaid property taxes through foreclosure proceedings. This argument is unpersuasive and is more appropriately made before Congress.

Clinton Cty. Treasurer v. Wolinsky, 511 B.R. 34, 38–39 (N.D.N.Y. 2014).

In rejecting a similar argument by a taxing authority, the Seventh Circuit

Court of Appeals held:

> While applying § 548 may make purchases of Illinois tax liens
> marginally less attractive as investments, federal law mandates this
> result. We must enforce the federal bankruptcy remedy for fraudulent
> transfers where the reasoning of *BFP* does not apply.

In re Smith, 811 F.3d at 240.

Moreover, there is a system already built into Article 11 RPTL to provide

relief to a county's homeowners and reduce the likelihood of litigation. This option

permits homeowners to repay property tax arrears through monthly installment

payment plans. RPTL §§ 1138(e) and 1184. This process would help reduce the

number of cases proceeding to auction or requiring litigation. Ontario County has

declined to adopt this state-sanctioned procedure designed to provide relief in a

pending tax foreclosure. Accordingly, the Gunsaluses are entitled to turn to federal

bankruptcy remedies to pay their creditors and save their home.

## **CONCLUSION**

For the foregoing reasons, Plaintiff-Appellants Gliee and Brian Gunsalus

respectfully request that this Court reverse the Bankruptcy Court's Decision to

grant Ontario County's motion to dismiss and remand this case to the Bankruptcy

Court for further proceedings.

Dated:     March 15, 2018
             Geneva, New York

Legal Assistance of Western New York, Inc.
Counsel for the Plaintiffs-Appellants
Gliee Gunsalus and Brian Gunsalus, Sr.

By:        /s/ Kari A. Talbott

_____

Kari A. Talbott, Esq.
361 S. Main Street
Geneva, New York 14456
Tel: (315) 781-1465
Fax: (315) 781-2565
ktalbott@lawny.org

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 8015</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

The undersigned counsel of record hereby certifies that this computer-generated brief contains 9718 words in compliance with the type-volume limitations contained in Rule 8015. As the basis for making this certification, I have relied upon the word count of the word processing system used to prepare it.

The brief was prepared using the proportionally spaced typeface using Microsoft Office Word 2010 in "Times New Roman" with 14 point type, in compliance with Fed. R. Bank. P. Rule 8015(a)(6).

Dated:      Geneva, New York
            March 15, 2018

                                    /s/ Kari A. Talbott

                        _____

                                    Kari A. Talbott

# ADDENDUM

United States Code Annotated
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 5. Creditors, the Debtor, and the Estate (Refs & Annos)
      Subchapter III. The Estate (Refs & Annos)

11 U.S.C.A. § 548

§ 548. Fraudulent transfers and obligations

Currentness

**(a)(1)** The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

  **(A)** made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

  **(B)(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and

  **(ii)(I)** was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

  **(II)** was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

  **(III)** intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

  **(IV)** made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

**(2)** A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be a transfer covered under paragraph (1)(B) in any case in which--

  **(A)** the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made; or

  **(B)** the contribution made by a debtor exceeded the percentage amount of gross annual income specified in subparagraph (A), if the transfer was consistent with the practices of the debtor in making charitable contributions.

**(b)** The trustee of a partnership debtor may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, to a general partner in the debtor, if the debtor was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

**(c)** Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

**(d)(1)** For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

**(2)** In this section--

**(A)** "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

**(B)** a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency that receives a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, takes for value to the extent of such payment;

**(C)** a repo participant or financial participant that receives a margin payment, as defined in section 741 or 761 of this title, or settlement payment, as defined in section 741 of this title, in connection with a repurchase agreement, takes for value to the extent of such payment;

**(D)** a swap participant or financial participant that receives a transfer in connection with a swap agreement takes for value to the extent of such transfer; and

**(E)** a master netting agreement participant that receives a transfer in connection with a master netting agreement or any individual contract covered thereby takes for value to the extent of such transfer, except that, with respect to a transfer under any individual contract covered thereby, to the extent that such master netting agreement participant otherwise did not take (or is otherwise not deemed to have taken) such transfer for value.

**(3)** In this section, the term "charitable contribution" means a charitable contribution, as that term is defined in section 170(c) of the Internal Revenue Code of 1986, if that contribution--

**(A)** is made by a natural person; and

**(B)** consists of--

    **(i)** a financial instrument (as that term is defined in section 731(c)(2)(C) of the Internal Revenue Code of 1986); or

    **(ii)** cash.

**(4)** In this section, the term "qualified religious or charitable entity or organization" means--

    **(A)** an entity described in section 170(c)(1) of the Internal Revenue Code of 1986; or

    **(B)** an entity or organization described in section 170(c)(2) of the Internal Revenue Code of 1986.

**(e)(1)** In addition to any transfer that the trustee may otherwise avoid, the trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition, if--

    **(A)** such transfer was made to a self-settled trust or similar device;

    **(B)** such transfer was by the debtor;

    **(C)** the debtor is a beneficiary of such trust or similar device; and

    **(D)** the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

**(2)** For the purposes of this subsection, a transfer includes a transfer made in anticipation of any money judgment, settlement, civil penalty, equitable order, or criminal fine incurred by, or which the debtor believed would be incurred by--

    **(A)** any violation of the securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47))), any State securities laws, or any regulation or order issued under Federal securities laws or State securities laws; or

    **(B)** fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*l* and 78*o*(d)) or under section 6 of the Securities Act of 1933 (15 U.S.C. 77f).

**CREDIT(S)**

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2600; Pub.L. 97-222, § 5, July 27, 1982, 96 Stat. 236; Pub.L. 98-353, Title III, §§ 394, 463, July 10, 1984, 98 Stat. 365, 378; Pub.L. 99-554, Title II, § 283(n), Oct. 27, 1986, 100 Stat. 3117; Pub.L. 101-311, Title I, § 104, Title II, § 204, June 25, 1990, 104 Stat. 268, 269; Pub.L. 103-394, Title V, § 501(b)(5), Oct. 22, 1994, 108 Stat. 4142; Pub.L. 105-183, §§ 2, 3(a), June 19, 1998, 112 Stat. 517; Pub.L. 109-8, Title IX, § 907(f), (o)(4) to (6), Title XIV, § 1402, Apr. 20, 2005, 119 Stat. 177, 182, 214.)

Notes of Decisions (2065)

11 U.S.C.A. § 548, 11 USCA § 548
Current through P.L. 115-132.

---

**End of Document**                                     © 2018 Thomson Reuters. No claim to original U.S. Government Works.